FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

97 MAY 20 PM 3:02

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| WILLIAM DAVID HOLTKAMP, etc., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 96-PT-2277-E |
| SHERIFF MAC HOLCOMB, et al., | ) ) ) | **ENTERED** |
| Defendants. | ) | MAY 2 0 1997 |

## Memorandum Opinion

    This cause comes on to be heard on a motion for summary judgment filed by defendants Sheriff Mac Holcomb ("Holcomb") and Lionel Pinn ("Pinn") on March 21, 1997. The defendants contend that the plaintiff, William David Holtkamp ("William Holtkamp"), cannot state a claim for a violation of the Fourteenth Amendment rights of the decedent, David Shane Holtkamp ("David Holtkamp"), under 42 U.S.C. § 1983.

    On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party

has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

Facts

The facts in the instant case are relatively uncontested.

The decedent was incarcerated for a sixty-day period, beginning on January 17, 1995, on conviction of a driving while under the influence and failing to pay fines related to the conviction. While being processed into the Marshall County Jail ("jail"), where he was to serve his term, the decedent was asked by Jailer Billy J. Graham if he suffered any mental illness. The decedent answered that he did not.

Until the evening of his suicide, the decedent appeared to the jail staff, fellow inmates, friends and family members not to show suicidal tendencies.

On the evening of February 7, 1995, the decedent destroyed a deck of cards belonging to another inmate of the jail. He was brought to Pinn, who, in the presence of another jailor and two other inmates, threatened to "kick [the decedent's] ass" and to suggest to the district attorney that the decedent be incarcerated for another six months. The decedent cried and acknowledged responsibility for destroying the cards, which he agreed to replace. Pinn then directed that the decedent be placed in lock-down (in a single-person cell) and suspended all of the decedent's privileges for seventy-two hours.

After the decedent was placed in lock-down, he was occasionally observed by jailor Leroy

Vanderver ("Vanderver"), who states that he did not notice any suicidal tendencies by the plaintiff. Vanderver provided the decedent with a mattress, a blanket or sheet and a Bible. The decedent appeared to be in normal shape until Vanderver ended his shift at midnight.

The next day, February 8, 1995, Vanderver reported to work at 4:00 p.m. Between 5:30 and 6:00, Vanderver delivered to the decedent the evening meal. According to Vanderver, the decedent was entirely normal and did not give any indication of an intent to commit suicide. At 9:14, Vanderver found the decedent suspended from a bar in the window of his cell by an arm sling. He was taken to the Guntersville-Arab Medical Center for treatment, where he was declared dead at 10:15 p.m.

## Contentions & Analysis

An officer is entitled to qualified immunity if, while acting in his capacity as a government officer, he violates no clearly established law of which a reasonable officer would have known based upon facts of which the officer was aware at the time of the alleged constitutional violation. Anderson v. Creighton, 483 U.S. 635, 640 (1987). In determining whether the law was clearly established, the court is to consider whether, at the time of the alleged violation, on facts materially similar to those in the instant case, the Supreme Court or the Eleventh Circuit Court of Appeals had held that a violation of the right at issue had occurred. Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994).

The right in issue in the instant case was the decedents' right to be free of cruel and unusual punishment, stated in the Eighth Amendment and incorporated against the states through he Fourteenth Amendment. In incidences of jail suicide, the Eighth Amendment has been violated where the state or local government has, through deliberate indifference to the decedent's suicidal condition, caused or contributed to the decedent's suicide. Edwards v. Gilbert, 867 F.2d 1271, 1274-75 (11th Cir. 1989). The right that the plaintiff alleges was violated is a sufficiently specific right that, if the facts are sufficient to show that right was violated might prove a constitutional violation.

The test for qualified immunity also requires, however, that the officer have a subjective awareness of facts based upon which a reasonable officer would see a violation of clearly established law. In the instant case, this would essentially equate to facts establishing knowledge of a substantial

risk of suicide. In the determination of whether an officer was deliberately indifferent to the substantial risk of suicide, the Supreme Court has indicated that "deliberate indifference" requires a subjective awareness of the substantial risk of suicide. To overcome qualified immunity under § 1983 and to demonstrate the existence of an underlying constitutional violation the plaintiff must show that either Pinn or Holcomb had a subjective awareness of a substantial likelihood of the decedent's suicide.

Central to the plaintiff's claim is the argument that the defendants were deliberately indifferent to the substantial likelihood of suicide by the plaintiff. The Supreme Court has clarified the standard for "deliberate indifference" in the Eighth Amendment context, stating that a prison official is deliberately indifferent if he or she was <u>actually aware</u> of a substantial risk of harm to the prisoner and disregarded that risk.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; <u>the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. <u>See</u> PROSSER AND KEETON §§ 2, 34, pp. 6, 213-214; <u>see also</u> Federal Tort Claims Act, 28 U.S.C.§§ 2671-2680; <u>United States v. Muniz</u>, 374 U.S. 150 [] (1963). <u>But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment</u>.

<u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994) (emphasis added). In addition, "to establish deliberate indifference in this circuit, the official must have notice of a 'strong likelihood, rather than a mere possibility,' of the particular decedent's suicidal tendencies." <u>Williams v. Lee County</u>, 78 F.3d 491, 493 (11th Cir. 1996).

The defendants argue that because no one was aware that the decedent posed a risk of danger to himself, the plaintiff is incapable of demonstrating that either Holcomb or Pinn was deliberately indifferent to the suicidal risk posed by the decedent. The plaintiff disagrees, citing to <u>Popham v. City of Talledega</u>, 908 F.2d 1561 (11th Cir. 1990), which arguably held that where a official should have known of a suicide risk and ignored it, that the official was deliberately indifferent to the risk of suicide. To the extent that the plaintiff relies upon this proposition, his

claim fails. Because Farmer, released by the Supreme Court after Popham, states that actual knowledge of the significant risk is required to show deliberate indifference, any language indicating that deliberate indifference could be shown where a defendant should have known of the significant risk is now invalid.

In the instant case, neither Pinn nor Holcomb had any actual indication that the decedent posed a strong likelihood of suicide. Nor, it seems, did anyone else. If the decedent entertained the possibility of suicide, he kept it to himself, informing neither jailors, fellow inmates, friends or family members of his intentions. Because no one was aware of a possible risk of suicide, much less a significant risk, the plaintiff's claim fails, insofar as it relates specifically to whether the defendants knew of the decedent that he would commit suicide.

The plaintiff attempts to get around this difficulty by contending that Holcomb should be liable even if he had no knowledge that the decedent would likely commit suicide because Holcomb knew that eventually someone would commit suicide in the jail. Instead of a fully developed screening process, contends the plaintiff, Holcomb merely required that an incoming prisoner be asked if he had any mental problems. Because that bare inquiry was not probing enough to uncover the possibility of suicide, Holcomb knew that it was likely that a suicide would occur in the jail. He failed to compensate for that risk either by training the jailors to better recognize the signs of suicide or by instituting policies and procedures through which specific suicide risks would be perceived.

Holcomb contests this claim, arguing, first, that because no suicides had occurred since 1980 or 1981, there was no established risk of suicide in the jails of which he should have known. Due to the absence of successful suicides in the past fourteen or fifteen years and the allegedly relatively few attempts at suicide in the past years, he could not have known that a significant risk of suicide existed among the inmates at the jail. The plaintiff argues that the attempts at suicides in the jail demonstrate a possibility of suicide in the jail of which Holcomb should have been aware and for which he should have attempted to implement screening procedures. Holcomb also argues that the plaintiff has not demonstrated that had new screening procedures been implemented and the guards been trained to recognize signs of suicide, the decedent would not have committed suicide.

The plaintiff must demonstrate a causal relation between the lack of policy and the suicide. In showing the causal link, the plaintiff must at least attempt demonstrate how, if the jail instituted certain policies, those policies would have prevented the suicide. Otherwise, the inference is that

regardless of the implementation of any policy, the decedent would have committed suicide. Because the plaintiff has not given any theory as to how any new policies would have allowed the officers to recognize the decedent as suicidal, the court cannot infer that the absence of any policy caused the decedent's demise. There is no clearly established law to this effect.

The court also notes that in Tittle v. Jefferson County Commission, 10 F.3d 1535 (11th Cir. 1994), the Eleventh Circuit Court of Appeals found that Jefferson County's failure to remedy allegedly defective jail conditions did not give rise to a claim:

> The plaintiffs cite no authority that supports the argument that the occurrence of two suicides and twenty-seven attempted suicides in the jail requires County officials to conclude that all prisoners of the Jefferson County Jail are substantially likely to attempt suicide. This infirmity of the plaintiffs' case is significant because "[t]he deliberate indifference standard is met only if there were a 'strong likelihood, rather than a mere possibility,' that self-infliction of harm would result" from the defendant's actions or inaction. Edwards, 867 F.2d at 1276. (citations omitted). The fact that one suicide occurred before Tittle committed suicide and two suicides occurred before Harrell committed suicide, without more, did not increase the possibility of suicide to a strong likelihood.

Id. at 1540-41.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment will be granted. The plaintiff's claims will be dismissed.

This 20th day of May 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE